FILED'05 NOV 04 12:43USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PETER L. FESKENS,                  Civil No. 04-750-HO

       Plaintiff,                 ORDER

    v.

COMMISSIONER, Social Security
Administration,

       Defendant.

Plaintiff seeks judicial review of the decision of the Commissioner denying his application for disability insurance benefits.

## Discussion

Plaintiff alleges disability commencing September 1, 2000, based on, among other impairments, heart disease, history of heart attack, diabetes, borderline intellectual functioning, post-traumatic stress disorder, personality disorders, depression, history of polysubstance abuse in remission, and alcohol abuse, impairments which the administrative law judge

(ALJ) found to be severe. (Tr. 88). After finding that the Commissioner denied a prior application for disability benefits in September 19, 2000, the ALJ determined that the issue to be resolved is whether plaintiff was disabled at any time after September 19, 2000, and prior to December 31, 2001, the date he was last insured for disability insurance benefits. (Tr. 24-25). Plaintiff did not allege diabetes, learning disability, shoulder bursitis and hypertension in his prior application.

Plaintiff argues that the ALJ failed to fully develop the record, improperly rejected his testimony and opinions of treating physicians, failed to consider his impairments in combination, incompletely analyzed medical equivalence at step 3, inaccurately assessed plaintiff's residual functional capacity, and presented an irrelevant hypothetical question to the vocational expert.

By alleging changed circumstances indicating greater disability, plaintiff overcomes the presumption of continuing disability created by the denial of his prior application. See Lester v. Chater, 81 F.3d 821, 827-28 (9th Cri. 1996). Plaintiff argues that important evidence of plaintiff's physical and mental condition is absent from the record, including medical records of his heart attack in 1996. Agency physicians considered ischemic heart disease as plaintiff's primary diagnosis. (Tr. 68-69). The record also contains the hearing decision and transcripts on

plaintiff's prior application. (Tr. 44, 259, 316). The hearing decision on the prior application refers to medically determinable impairments of coronary artery disease and several mental impairments. (Tr. 29). The record should also include plaintiff's medical records dating back to the heart attack in March, 1996. See 20 C.F.R. § 404.1512(d) (agency will develop complete medical history for at least 12 months preceding the application month, unless there is reason to believe development of an earlier period is necessary).

Plaintiff provided the following testimony regarding his symptoms during the relevant time period: following a heart attack and angioplasty, plaintiff experienced leg cramps and fatigue requiring several naps each day; plaintiff developed neuropathy and feet problems during 2001; plaintiff felt fatigued and weak everyday from the time he began seeing Dr. Fitzgerald in 2000; plaintiff could perform household chores on good days, although he still required a nap; plaintiff slept on bad days, after being up and down all night because his feet hurt "due to cramps and stuff;" plaintiff's foot cramping was "[k]ind of like a pain across the arch . . . sometimes it almost felt like somebody . . . had set on my feet for a long time and . . . it goes to sleep," and "it feels like it's filled with sand or something;" plaintiff could walk two or three blocks before having to rest, and could not walk that far over inclined

3 - ORDER

terrain. (Tr. 247-252).

The ALJ found plaintiff "not entirely credible in light of the treatment record." (Tr. 28). The ALJ explained his credibility finding as follows.

> Prior to his date last insured the claimant did complain of numbness of the feet, leg cramps and fatigue. (Exhibit B9F-25, 26). However, the first report of foot pain in the medical record is in March 2002, after his date last insured (Exhibit B9F-16). He was not prescribed any medications for pain complaints. Despite his allegations that he has experienced significant fatigue and shortness of breath since his heart attack, his cardiologist indicates he had not seen the claimant since February 1997 until a December 2002 hospitalization for congestive heart failure (Exhibit B9F-1). The record reflects that claimant did have some significant limitations related to his diabetes and heart disease prior to his date last insured but he was able to manage activities of daily living including household chores, cooking, shopping and driving. While the claimant may have napped on a daily basis, there is no evidence that naps were a medical necessity. The claimant's credibility is further undermined by his lack of compliance with treatment recommendations. The claimant continued to drink heavily despite difficulty in controlling his blood sugars. His physician repeatedly recommended that he become more diligent in his blood sugar monitoring and diet. (Exhibit B9F).
> * * *
> Recent records reflect that the claimant's condition worsened significantly in recent months. The claimant was prescribed a motorized wheelchair in November, 2002. He has developed more severe peripheral neuropathy and intermittent claudication (Exhibit B9F-6,7). Chest x-rays in December 2002 were consistent with congestive heart failure and the claimant was hospitalized for a week with severe heart failure (Exhibit B9F). These events occurred well after his date last insured however.

(Tr. 28).

Where the plaintiff produces medical evidence of an

impairment reasonably expected to produce a symptom, the ALJ can reject a claimant's symptom testimony only by offering specific, clear and convincing reasons for doing so. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The reasons stated by the ALJ do not meet this standard.

Plaintiff's testimony regarding his feet is not inconsistent with the medical evidence cited by the ALJ. Plaintiff reported leg cramps to Dr. Sjodin in December, 2000, and reported foot numbness to Dr. Fitzgerald in March and May, 2001. (Tr. 191, 226). In contrast to the ALJ's finding, there is evidence that Dr. Fitzgerald prescribed Celebrex for pain related to diabetes. (Tr. 227). While plaintiff may not have seen Dr. Lowry between February, 1997, and December, 2002, Dr. Lowry's notes do not express concern that plaintiff continued primary care with Dr. Price and Dr. Fitzgerald.[1] (Tr. 201). Dr. Fitzgerald's notes indicate that he followed plaintiff for heart disease, hypertension and diabetes, and that plaintiff received mediation for these conditions. (Tr. 220-32). The ALJ points to no evidence indicating that plaintiff should have seen Dr. Lowry instead of Drs. Price and Fitzgerald. Activities of daily living identified by the ALJ are not inconsistent with plaintiff's testimony or claim of disability.

---

[1] Medical records before the court go back only to July 10, 2000.

5 - ORDER

The ALJ found plaintiff's credibility undermined by the lack of evidence that naps were a medical necessity. The court does not understand how this fact impugns plaintiff's credibility. In finding plaintiff's credibility undermined by his continued drinking and failure to follow treatment recommendations, the ALJ failed to address his own findings that plaintiff is impaired by alcohol abuse and borderline intellectual functioning. Doctors noted that plaintiff's mental impairments may impede diabetic education and management of plaintiff's conditions. (Tr. 199, 200, 204).

Although the ALJ improperly found plaintiff not fully credible, plaintiff's testimony does not establish his entitlement to benefits. Plaintiff did not state the frequency or duration of required naps, or how many days per month he must miss work.

The ALJ correctly found that there is no indication that Dr. Fitzgerald's opinion was intended to reflect plaintiff's functioning prior to plaintiff's date last insured. (Tr. 29, 235-36).[2]

Where the ALJ sets forth the medical evidence in sufficient detail, and the plaintiff, as here, fails to explain his theory

---

[2]The record contains a second opinion by Dr. Fitzgerald, dated March 17, 2004, after the ALJ's decision. Dr. Fitzgerald opines that plaintiff's limitations on the date last insured were similar to the limitations he found in his first opinion. (Tr. 239-40).

6 - ORDER

of medical equivalency, the ALJ's finding that impairments are not equivalent to a listed impairment will be upheld. See Lester v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001). Because the record is incomplete, the substantial evidence does not support the ALJ's non-equivalent finding, the assessment of plaintiff's residual functional capacity, and the hypothetical question.

The decision of the Commissioner must be reversed and this matter remanded to the ALJ to develop the record and issue a new decision. On remand, the record shall be supplemented with plaintiff's medical records from March, 1996, through June, 2000, in accordance with 20 C.F.R. § 404.1512 and this opinion. The ALJ shall also consider the March 17, 2004 opinion of Dr. Fitzgerald. (Tr. 239-40). This order does not limit the ALJ's ability to further develop the record as he sees fit.

## Conclusion

Based on the foregoing, the decision of the Commissioner is reversed. This matter is remanded for further administrative proceedings, consistent with this opinion.

IT IS SO ORDERED.

DATED this 4th day of ~~October~~ Nov., 2005.

Michael R. Hogan
United States District Judge